USDC SCAN INDEX SHEET

















CAG    12/5/03    11:18

3:97-CR-02520   USA V. ARELLANO-FELIX

*61*

*CRINDISPS.*

FILED

03 DEC -4 PM 2:24

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

July 2002 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>ALBERTO BENJAMIN<br>      ARELLANO-FELIX (1),<br>    aka El Senor,<br>    aka El Min,<br>    aka 76,<br>    aka 7-7,<br>    aka MK,<br>    aka Licenciado Sanchez,<br>    aka Licenciado Alegria,<br>EDUARDO RAMON<br>      ARELLANO-FELIX (2),<br>    aka El Senor,<br>    aka El Gualin,<br>    aka El Profe,<br>    aka El Abuelito,<br>    aka 13,<br>FRANCISCO JAVIER<br>      ARELLANO-FELIX (3),<br>    aka El Tigrillo,<br>MANUEL AGUIRRE-GALINDO (4),<br>    aka El Caballo,<br>    aka A-1,<br>    aka El Meno,<br>    aka El Galan,<br>    aka El Promotor,<br>JESUS LABRA-AVILES (5),<br>    aka Chuy Labra,<br>    aka Don Chuy,<br>    aka Chulitio,<br>    aka 25, | Criminal Case No.  97CR2520K<br><br>I N D I C T M E N T<br>**(7th Superseding)**<br><br>Title 18, U.S.C., Sec. 1962(c) -<br>Conducting the Affairs of an<br>Enterprise Through Pattern of<br>Racketeering Activity; Title 18,<br>U.S.C., Sec. 1962(d) - Conspiracy<br>to Conduct Enterprise Affairs<br>Through Pattern of Racketeering<br>Activity; Title 21, U.S.C.,<br>Secs. 952(a), 960, and 963 -<br>Conspiracy to Import a Controlled<br>Substance; Title 21, U.S.C.,<br>Secs. 841(a)(1) and 846 -<br>Conspiracy to Distribute a<br>Controlled Substance; Title 18,<br>U.S.C., Secs. 1956(a) and<br>1956(h) - Conspiracy to Launder<br>Monetary Instruments; Title 18,<br>U.S.C., Sec. 2 - Aiding and<br>Abetting; Title 21, U.S.C.,<br>Sec. 853 and Title 18, U.S.C.,<br>Secs. 982(a)(1), (b)(1) and<br>1963(a) - Criminal Forfeiture |

LED/JDK:nlv:San Diego
12/4/03

61

```
1  ISMAEL HIGUERA-GUERRERO (6),     )
        aka El Mayel,               )
2       aka Clave Privada,          )
        aka Pluma-Blanca,           )
3       aka La Senora,              )
        aka 30,                     )
4       aka 8-1,                    )
   GILBERTO HIGUERA-GUERRERO (7),   )
5       aka El Gil,                 )
        aka Gil,                    )
6       aka Gilillo,                )
        aka 28,                     )
7  EFRAIN PEREZ (8),                )
        aka Efra,                   )
8       aka 85,                     )
   JORGE AURELIANO-FELIX (9),       )
9       aka Macumba,                )
   RIGOBERTO YANEZ (10),            )
10      aka Primo,                  )
        aka Primo Pedro,            )
11 ARMANDO MARTINEZ-DUARTE (11),    )
        aka El Loco Duarte,         )
12                                  )
                   Defendants.      )
13 _____ )
```

14      The grand jury charges:

15                           **Count 1**

16              **THE RACKETEERING SUBSTANTIVE OFFENSE**

17      1.    Beginning in or about the year 1986, and continuing up to

18 and including November 26, 2002, within the Southern District of

19 California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,

20 aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado

21 Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El

22 Doctor, aka El Gualin, aka El Profe, aka El Abuelito, aka 13,

23 FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-

24 GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan, aka El

25 Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka

26 Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave

27 Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO

28 HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN

1  PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO

2  YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El

3  Loco Duarte; co-conspirators Ramon Arellano-Felix, Everardo Arturo

4  Paez-Martinez, David Barron-Corona; and others known and unknown to

5  the grand jury, being employed by and associated with the Enterprise,

6  (as defined below), which Enterprise was engaged in, and the

7  activities of which affected interstate and foreign commerce, did

8  knowingly and intentionally conduct and participate, directly and

9  indirectly, in the conduct of the Enterprise's affairs through a

10  pattern of racketeering activity, as defined by Title 18, United

11  States Code, Sections 1961(1) and (5), and as described in paragraph 7

12  of this Count.

13                            **THE ENTERPRISE**

14     2.   At various times material to this indictment:

15          a.   Defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO

16  RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-

17  GALINDO,   JESUS   LABRA-AVILES,   ISMAEL   HIGUERA-GUERRERO,   GILBERTO

18  HIGUERA-GUERRERO,   EFRAIN   PEREZ,   JORGE   AURELIANO-FELIX,   RIGOBERTO

19  YANEZ, ARMANDO MARTINEZ-DUARTE (collectively "Defendants"), and others

20  known and unknown, were members and associates of the Arellano-Felix

21  Organization (hereinafter "AFO"), a criminal organization whose

22  members and associates engaged in: (1) the illegal trafficking of

23  narcotics, including but not limited to cocaine and marijuana; (2) the

24  laundering of drug proceeds gained from the AFO's drug trafficking

25  activities; (3) the kidnaping, torture and murder of informants, rival

26  traffickers, uncooperative law enforcement, and other perceived

27  "enemies" of the AFO; and (4) the systematic bribing of Mexican law

28  enforcement and military personnel.

3

1        b.    The AFO operated principally in the cities of Tijuana

2 and Mexicali, Baja California Norte, Republic of Mexico, although the

3 AFO's operations extended into southern Mexico, as well as Colombia

4 and the United States.

5        c.    The AFO, including its leadership, membership and

6 associates, constituted an "Enterprise," as defined by Title 18,

7 United States Code, Section 1961(4) (hereinafter "the Enterprise"),

8 that is, a group of individuals associated in fact.  The Enterprise

9 constituted an ongoing organization whose members functioned as a

10 continuing unit for a common purpose of achieving the objectives of

11 the Enterprise.  This enterprise was engaged in, and its activities

12 affected, interstate and foreign commerce.

13 **OBJECTIVES OF THE ENTERPRISE**

14    3.    The objectives of the Enterprise included the following:

15        a.    Enriching members and associates of the Enterprise

16 through the importation and distribution of illegal drugs in the

17 United States.

18        b.    Preserving and protecting the Enterprise's control over

19 the Tijuana and Mexicali "plaza," or drug-trafficking marketplace,

20 through the use of intimidation, threats of violence, and violence,

21 including kidnaping, torture and murder.

22        c.    Keeping rival traffickers, potential informants and

23 witnesses, Mexican law enforcement, the Mexican media, and the Mexican

24 public-at-large in fear of the Enterprise, and in fear of its members

25 and associates through threats of violence and violence.

26        d.    Promoting and enhancing the Enterprise and its members'

27 and associates' activities.

28 //

4

1        **ORGANIZATIONAL STRUCTURE OF THE ENTERPRISE**

2        4.    The Enterprise operated within a well-defined hierarchical

3   structure, with defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO

4   RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-

5   GALINDO, and JESUS LABRA-AVILES, along with deceased Enterprise member

6   Ramon Arellano-Felix, serving as the top leadership of the Enterprise;

7   defendant ISMAEL HIGUERA-GUERRERO serving as the top lieutenant of the

8   Enterprise, and defendants GILBERTO HIGUERA-GUERRERO, EFRAIN PEREZ,

9   JORGE AURELIANO-FELIX, RIGOBERTO YANEZ, and ARMANDO MARTINEZ-DUARTE

10  serving as second-level managers of the Enterprise, answerable to

11  defendant ISMAEL HIGUERA-GUERRERO.

12        **ROLES OF THE DEFENDANTS**

13        5.    The defendants participated in the operation and management

14  of the Enterprise.  At various times material to this Indictment, the

15  defendants had the following roles in the Enterprise:

16        a.    Defendant ALBERTO BENJAMIN ARELLANO-FELIX was principal

17  organizer and top leader of the Enterprise, and had the ultimate

18  decision-making authority over all major Enterprise decisions,

19  including the organization and transportation of shipments of drugs

20  into the United States, distribution operations in the United States,

21  and enforcement activities undertaken by members of the Enterprise.

22        b.    Defendant EDUARDO RAMON ARELLANO-FELIX was the senior

23  advisor to defendant ALBERTO BENJAMIN ARELLANO-FELIX, and was involved

24  in, and consulted about, all major Enterprise decisions, including the

25  organization and transportation of drug shipments into the United

26  States, distribution operations in the United States, and the

27  kidnaping and murder of Enterprise "enemies."

28  //

5

1    c.    Defendant FRANCISCO JAVIER ARELLANO-FELIX participated
2  in  most  major  Enterprise  decisions,  acted  as  defendant  ALBERTO
3  BENJAMIN ARELLANO-FELIX's representative at meetings defendant ALBERTO
4  BENJAMIN ARELLANO-FELIX was unable to attend, and was put in charge
5  of the Enterprise's Tijuana and Mexicali operations after the arrest
6  of defendant ISMAEL HIGUERA-GUERRERO in May of 2000.

7    d.    Defendant  MANUEL  AGUIRRE-GALINDO  participated  as  a
8  "senior  partner"  in  the  Enterprise.    As  such,  he:  (1)  regularly
9  participated  in  major  Enterprise  decisions,  including  decisions  to
10  murder Enterprise "enemies;" (2) used his extensive connections with
11  Colombian cocaine sources to arrange for the shipment of cocaine to
12  the Enterprise; and (3) used his law enforcement and military contacts
13  to  provide  protection  for  the  Enterprise's  leadership  and  drug
14  shipments.

15    e.    Defendant  JESUS  LABRA-AVILES  also  participated  as  a
16  "senior  partner"  in  the  Enterprise.    As  such,  he:  (1)  regularly
17  participated in major Enterprise decisions; (2) used his connections
18  with Colombian cocaine suppliers, and Mexican marijuana suppliers, to
19  arrange  for  the  shipment  of  these  drugs  to  the  Enterprise;  and
20  (3) used his own network of law enforcement and military contacts to
21  provide protection for the Enterprise's leadership and drug shipments.

22    f.    Defendant ISMAEL HIGUERA-GUERRERO participated as the
23  Enterprise's top lieutenant, answerable to defendant ALBERTO BENJAMIN
24  ARELLANO-FELIX  and  responsible  for  the  Enterprise's  day-to-day
25  operations throughout Mexico, including the receipt of large shipments
26  of cocaine and marijuana, and the importation of those drugs into the
27  United States. Defendant ISMAEL HIGUERA-GUERRERO was also responsible
28  for  the  collection  of  Enterprise  drug  trafficking  proceeds,  the

6

1  "policing" of the Tijuana "plaza," and the kidnaping, torture and
2  murder of Enterprise "enemies."

3       g.    Defendant GILBERTO HIGUERA-GUERRERO, acting under the
4  direction of his brother, defendant ISMAEL HIGUERA-GUERRERO, was
5  responsible for supervising the Enterprise's Mexicali, Mexico,
6  operations.  Defendant GILBERTO HIGUERA-GUERRERO's responsibilities
7  included: (1) the receipt of drug shipments from Tijuana and elsewhere
8  in Mexico; (2) the importation of those drugs into the United States
9  through the Mexicali Port of Entry; (3) the "policing" of the Mexicali
10 "plaza;" and (4) the kidnaping, torture and murder of Enterprise
11 "enemies" operating in Mexicali, Mexico.

12      h.    Defendant EFRAIN PEREZ, acting under the direction of
13 defendant ISMAEL HIGUERA-GUERRERO, was primarily responsible for:
14 (1) organizing the Enterprise's receipt of large drug shipments;
15 (2) supervising the importation of those drugs into the United States
16 through the Tijuana Port of Entry; and (3) working closely with
17 defendant ISMAEL HIGUERA-GUERRERO in the Enterprise's enforcement
18 activities in Tijuana and Ensenada, Mexico.

19      i.    Defendant JORGE AURELIANO-FELIX, acting under the
20 direct supervision of defendant EFRAIN PEREZ, was responsible for:
21 (1) ensuring the safety of drugs stored in Tijuana prior to their
22 importation into the United States; and (2) for taking delivery of,
23 and accounting for, proceeds generated from the Enterprise's illegal
24 drug trafficking activities.

25      j.    Defendant RIGOBERTO YANEZ acted as the Enterprise's
26 primary representative in Mexico City, Mexico.  As such, he:
27 (1) served as the initial point of contact for Colombian traffickers
28 wishing to do business with defendant ISMAEL HIGUERA-GUERRERO;

7

1  (2) transmitted money to Colombian drug traffickers; (3) supervised
2  the receipt of drug shipments that arrived outside of the Baja
3  California, Mexico, area, and the transportation of those drugs to the
4  Tijuana and/or Mexicali areas; and (4) had primary responsibility for
5  the kidnaping and murder of Enterprise "enemies" in Mexico City.

6      k.   Defendant ARMANDO MARTINEZ-DUARTE, a former high-
7  ranking Mexican law enforcement official in Mexicali, Mexico, acted
8  as the Enterprise's "chief of security" and "chief enforcer" in the
9  Mexicali area.  Defendant ARMANDO MARTINEZ-DUARTE was responsible for:
10 (1) protecting Enterprise activities in Mexicali from interference by
11 Mexican law enforcement; and (2) under the direction of defendant
12 GILBERTO HIGUERA-GUERRERO, for supervising the kidnaping, torture and
13 murder of Enterprise "enemies" in the Mexicali area.

14              **METHOD AND MEANS OF THE ENTERPRISE**

15     6.   Defendants and their associates used the following method
16 and means, among others, to conduct and participate in the conduct of
17 the affairs of the enterprise:

18      a.   Defendants, along with other members of the Enterprise,
19 negotiated with Colombian cocaine suppliers to arrange for the
20 purchase and transportation of multi-ton shipments of cocaine from
21 Colombia to Mexico;

22      b.   Defendants, along with other members of the Enterprise,
23 arranged for the transmission of U.S. dollars, in the form of
24 cashier's checks, wire transfers, and bulk cash shipments, to Colombia
25 to pay for these multi-ton cocaine shipments;
26 //
27 //
28 //

8

1          c.    Defendants, along with other members of the Enterprise,

2  also negotiated with Mexican marijuana suppliers in the interior of

3  Mexico to arrange for the purchase of multi-ton shipments of

4  marijuana;

5          d.    Defendants, along with other members of the Enterprise,

6  received large shipments of cocaine in Mexico, from Colombia, via

7  commercial fishing boats, private planes, commercial airliners, and

8  cargo shipments;

9          e.    Defendants, along with other members of the Enterprise,

10  transported large loads of cocaine and marijuana overland by convoys

11  of vehicles, or hidden in large commercial trucks, through Mexico, to

12  locations along the Mexico/California border;

13          f.    Defendants, along with other members of the Enterprise,

14  smuggled cocaine and marijuana into the United States by various

15  methods, including the trunks of vehicles, secret compartments located

16  inside personal and commercial vehicles, helicopters, backpackers, and

17  small boats;

18          g.    Defendants, along with other members of the Enterprise,

19  obtained vehicles to be used as load vehicles to transport drugs and

20  cash, and recruited and paid individuals to drive these vehicles;

21          h.    Defendants, along with other members of the Enterprise,

22  arranged for cocaine and marijuana to be smuggled into the United

23  States, and delivered to their customers in Los Angeles, California,

24  and elsewhere in the United States;

25          i.    Defendants, along with other members of the Enterprise,

26  arranged for the proceeds of their drug trafficking activities in the

27  United States to be smuggled across the U.S./Mexican border and into

28  Mexico;

1          j.    Defendants, along with other members of the Enterprise,

2 systematically bribed Mexican law enforcement and military officials

3 to: (1) protect the Enterprise's leadership and drug shipments; (2)

4 inform Enterprise members of Mexican and United States law enforcement

5 activities; (3) arrest rival drug traffickers; and (4) seize drug

6 loads belonging to rival traffickers and give those loads to members

7 of the Enterprise;

8          k.    Defendants, along with other members of the Enterprise,

9 discussed Enterprise affairs and business in person and over

10 communications equipment, using various codes to disguise their

11 identities and the meaning of their conversations;

12          l.    Defendants, along with other members of the Enterprise,

13 obtained and used armored vehicles that were specially equipped with

14 guns, bulletproof glass, oil, nail or smoke dispensers, and other

15 sophisticated equipment to be used to attack or evade Mexican law

16 enforcement and rival drug traffickers;

17          m.    Defendants, along with other members of the Enterprise,

18 obtained houses and other locations in Mexico and the United States

19 which they used to store drugs, guns, money, and armored vehicles, and

20 as bases for their operations;

21          n.    Defendants, along with other members of the Enterprise,

22 operated houses known as "nests" or "caves" which were used to conduct

23 wiretaps and to monitor the communications of members of the

24 enterprise, rival drug traffickers, and Mexican law enforcement

25 officials in order to monitor their activities and obtain information

26 useful to the Enterprise;

27 //

28 //

o.   Defendants, along with other members of the Enterprise, purchased hundreds of firearms and other equipment, in the United States and elsewhere, including AK-47s, Colt 38 Supers, 50 Caliber machine guns, Uzi machine guns, AR-15s, and bulletproof vests, for AFO enforcement crew members to use in carrying out the enforcement activities of the Enterprise.

p.   Defendants, along with other members of the Enterprise, obtained military and law enforcement uniforms and credentials that were used by Enterprise members in furtherance of their drug trafficking activities;

q.   Defendants, along with other members of the Enterprise, recruited, organized, and trained groups of bodyguards and assassins who would protect the Enterprise leaders and conduct assassinations of Enterprise "enemies;"

r.   Defendants, along with other members of the Enterprise, enforced various rules of the Enterprise, such as the prohibition against cooperating with law enforcement, and would punish and murder other members of the Enterprise who violated the rules in order to promote discipline, punish disobedient members, and make examples of those who disobeyed the rules of the Enterprise;

s.   Defendants, along with other members of the Enterprise, organized and directed the kidnaping, torture and murder of Enterprise "enemies" in Mexico and the United States, including rival drug traffickers, suspected cooperators, uncooperative law enforcement or military personnel, and members of the Mexican news media who printed stories unfavorable toward the Enterprise.

t.   Defendants, along with other members of the Enterprise, negotiated with the FARC (Colombian Revolutionary Armed Forces), a

11

1  Colombian guerrilla organization, in an effort to arrange a cocaine

2  for weapons partnership with the FARC, whereby the FARC would provide

3  the AFO with cocaine in exchange for money and weapons.

4                    **THE PATTERN OF RACKETEERING**

5       7.   The  pattern  of  racketeering  activity,  as  defined  in

6  Title 18, United States Code, Sections 1961(1) and 1961(5), consisted

7  of the following acts:

8                      Racketeering Act No. 1
                (Conspiracy to Import Controlled Substances)
9
        Beginning in or about the year 1986, and continuing up to and
10  including  November  26,  2002,  within  the  Southern  District  of
   California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,
11  EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL
   AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, GILBERTO
12  HIGUERA-GUERRERO,  EFRAIN  PEREZ,  JORGE  AURELIANO-FELIX,  RIGOBERTO
   YANEZ, and ARMANDO MARTINEZ-DUARTE, did knowingly and intentionally
13  conspire with each other, and other persons known and unknown to the
   grand jury, to import controlled substances, including 500 grams and
14  more of cocaine, a Schedule II Controlled Substance, and 100 kilograms
   and more of marijuana, a Schedule I Controlled Substance, into the
15  United States from a place outside thereof; in violation of Title 21,
   United States Code, Sections 952(a), 960, and 963.
16
                      Racketeering Act No. 2
17               (Conspiracy to Distribute Controlled Substances)

18      Beginning in or about the year 1986, and continuing up to and
   including  November  26,  2002,  within  the  Southern  District  of
19  California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,
   EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL
20  AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, GILBERTO
   HIGUERA-GUERRERO,  EFRAIN  PEREZ,  JORGE  AURELIANO-FELIX,  RIGOBERTO
21  YANEZ, and ARMANDO MARTINEZ-DUARTE, did knowingly and intentionally
   conspire with each other, and other persons known and unknown to the
22  grand jury, to distribute controlled substances, including 500 grams
   and  more  of  cocaine,  a  Schedule  II  Controlled  Substance,  and
23  100  kilograms  and  more  of  marijuana,  a  Schedule  I  Controlled
   Substance;  in  violation  of  Title  21,  United  States  Code,
24  Sections 841(a)(1) and 846.

25  //

26  //

27  //

28  //

                                  12

<div align="center">

Racketeering Act No. 3
(Conspiracy To Launder Drug Proceeds)

</div>

Beginning in or about the year 1986, and continuing up to and including November 26, 2002, within the Southern District of California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, GILBERTO HIGUERA-GUERRERO, EFRAIN PEREZ, JORGE AURELIANO-FELIX, RIGOBERTO YANEZ, and ARMANDO MARTINEZ-DUARTE, did knowingly and intentionally conspire and agree with each other, and with other persons known and unknown to the grand jury, to:

(a) conduct a financial transaction affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, which in fact involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance, punishable under the laws of the United States: (1) with the intent to promote the carrying on of specified unlawful activity; and (2) knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i); and

(b) knowingly transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States: (1) with the intent to promote the carrying on of specified unlawful activity; and (2) knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control, of the proceeds of specified unlawful activity; in violation of Title 18, United States Code, Sections and 1956(a)(2)(A) and (B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## TIJUANA BASED TRAFFICKING OPERATIONS - Racketeering Acts No. 4-16

<div align="center">

Racketeering Act No. 4
(Importation of Cocaine)

</div>

On or about October 3, 1990, in Otay Mesa, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, and ISMAEL HIGUERA GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and Title 18, United States Code, Section 2.

<div align="center">

13

</div>

<div align="center">

Racketeering Act No. 5

(Possession With Intent to Distribute Cocaine)

</div>

The defendants, ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, and ISMAEL HIGUERA-GUERRERO, committed the following acts, either one of which alone constitutes Racketeering Act Five:

(a.) On or about June 26, 1991, in Imperial Beach, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, and ISMAEL HIGUERA-GUERRERO, did knowingly and intentionally possess with intent to distribute 500 grams and more of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

(b.) On or about June 26, 1991, in National City, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, and ISMAEL HIGUERA-GUERRERO, did knowingly and intentionally possess with intent to distribute 500 grams and more of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

<div align="center">

Racketeering Act No. 6

(Possession With Intent To Distribute Cocaine)

</div>

The defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, committed the following acts, any one of which alone constitutes Racketeering Act Six:

(a.) On or about July 31, 1991, in Los Angeles, California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, possessed with intent to distribute 500 grams and more of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

(b.) On or about July 31, 1991, in Tustin, California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, possessed with intent to distribute 500 grams and more of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United

<div align="center">14</div>

1  States Code, Section 841(a)(1), and Title 18, United States Code,
   Section 2.

2

3      (c.) On or about August 6, 1991, in Fontana, California,
   defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-
   FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO,

4  possessed with intent to distribute 500 grams and more of cocaine, a
   Schedule II Controlled Substance; in violation of Title 21, United

5  States Code, Section 841(a)(1), and Title 18, United States Code,
   Section 2.

6

7      (d.) On or about August 6, 1991, in Fontana, California,
   defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-
   FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO,

8  possessed with intent to distribute 500 grams and more of cocaine, a
   Schedule II Controlled Substance; in violation of Title 21, United

9  States Code, Section 841(a)(1), and Title 18, United States Code,
   Section 2.

10

                       Racketeering Act No. 7
11              (Possession With Intent To Distribute Cocaine)

12     On or about October 9, 1991, in Fontana, California, defendants
   ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX,

13 FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO,
   possessed with intent to distribute 500 grams and more of cocaine, a

14 Schedule II Controlled Substance; in violation of Title 21, United
   States Code, Section 841(a)(1), and Title 18, United States Code,

15 Section 2.

16                     Racketeering Act No. 8
                (Possession With Intent To Distribute Cocaine)
17

18     On or about November 12, 1991, in Jefferson City, Missouri,
   defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-

19 FELIX, and FRANCISCO JAVIER ARELLANO-FELIX, possessed with intent to
   distribute 500 grams and more of cocaine, a Schedule II Controlled

20 Substance; in violation of Title 21, United States Code,
   Section 841(a)(1), and Title 18, United States Code, Section 2.

21                     Racketeering Act No. 9
                      (Importation of Cocaine)
22

23     On or about February 4, 1992, in Campo, California, within the
   Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-

24 FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX,
   ISMAEL HIGUERA-GUERRERO, EFRAIN PEREZ, and JORGE AURELIANO-FELIX, did

25 knowingly and intentionally import 500 grams and more of cocaine, a
   Schedule II Controlled Substance, into the United States from a place

26 outside thereof; in violation of Title 21, United States Code,
   Sections 952(a) and 960, and Title 18, United States Code, Section 2.

27 //

28 //

                                 15

1

<u>Racketeering Act No. 10</u>
(Importation of Cocaine)

2

3        On or about February 25, 1992, in Campo, California, within the
Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX,
4   ISMAEL HIGUERA-GUERRERO, EFRAIN PEREZ, and JORGE AURELIANO-FELIX, did
knowingly and intentionally import 500 grams and more of cocaine, a
5   Schedule II Controlled Substance, into the United States from a place
outside thereof; in violation of Title 21, United States Code,
6   Sections 952(a) and 960, and Title 18, United States Code, Section 2.

7

<u>Racketeering Act No. 11</u>
(Importation of Cocaine)

8

9        On or about April 24, 1992, in Calexico, California, within the
Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX
10   and EFRAIN PEREZ did knowingly and intentionally import 500 grams and
more of cocaine, a Schedule II Controlled Substance, into the United
11   States from a place outside thereof; in violation of Title 21, United
States Code, Sections 952(a) and 960, and Title 18, United States
12   Code, Section 2.

13

<u>Racketeering Act No. 12</u>
(Importation of Cocaine)

14

15       On or about May 28, 1992, in Otay Mesa, California, within the
Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX,
16   MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, and ISMAEL HIGUERA-
GUERRERO, did knowingly and intentionally import 500 grams and more
17   of cocaine, a Schedule II Controlled Substance, into the United States
from a place outside thereof; in violation of Title 21, United States
18   Code, Sections 952(a) and 960, and Title 18, United States Code,
Section 2.

19

<u>Racketeering Act No. 13</u>
(Importation of Cocaine)

20

21       On or about July 7, 1995, in San Diego, California, within the
Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
22   FELIX, EDUARDO RAMON ARELLANO-FELIX, and FRANCISCO JAVIER ARELLANO-
FELIX, did knowingly and intentionally import 500 grams and more of
23   cocaine, a Schedule II Controlled Substance, into the United States
from a place outside thereof; in violation of Title 21, United States
24   Code, Sections 952(a) and 960, and Title 21, United States Code,
Section 2.

25

<u>Racketeering Act No. 14</u>
(Possession With Intent to Distribute Cocaine)

26

27       On or about July 11, 1995, in San Diego, California, within the
Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
28   FELIX, EDUARDO RAMON ARELLANO-FELIX, and FRANCISCO JAVIER ARELLANO-

1 FELIX, did knowingly and intentionally possess with intent to
distribute 500 grams and more of cocaine; in violation of Title 21,
2 United States Code, Section 841(a)(1), and Title 18, United States
Code, Section 2.

3

### Racketeering Act No. 15
4 (Extortion and Laundering of Drug Proceeds)

5    Defendant JESUS LABRA-AVILES committed the following acts, either

6 one of which alone constitutes Racketeering Act Fifteen:

7    (a.) In or about February 1998, in Santa Ana, California, at the
direction of defendant JESUS LABRA-AVILES, members of an enforcement
8 crew did unlawfully extort money and other property, that is
approximately $68,000, from another by means of force, fear, and
9 threat, that is to do an unlawful injury; in violation of California
Penal Code Section 520.

10

     (b.) In or about February 1998, defendant JESUS LABRA-AVILES, did
11 knowingly and intentionally transport, transmit and transfer monetary
instruments and funds, that is approximately $68,000, from a place in
12 the United States, that is Santa Ana, California, to and through a
place outside of the United States, that is the Republic of Mexico,
13 with the intent to promote the carrying on of a specified unlawful
activity, that is the felonious manufacture, importation, receiving,
14 concealment, buying, selling, and otherwise dealing in a controlled
substance, punishable by the law of the United States; in violation
15 of Title 18, United States Code, Sections 1956(a)(2)(A), and 2.

16              ### Racketeering Act No. 16
            (Extortion and Laundering of Drug Proceeds)
17

     Defendant JESUS LABRA-AVILES committed the following acts, either
18
one of which alone constitutes Racketeering Act Sixteen:
19

     (a.) In or about March 1998, in Santa Ana, California, at the
20 direction of defendant JESUS LABRA-AVILES, members of an enforcement
crew did unlawfully extort money and other property, that is
21 approximately $132,000, from another by means of force, fear, and
threat, that is to do an unlawful injury; in violation of California
22 Penal Code Section 520.

23    (b.) In or about March 1998, defendant JESUS LABRA-AVILES, did
knowingly and intentionally transport, transmit and transfer monetary
24 instruments and funds, that is approximately $132,000, from a place
in the United States, that is Santa Ana, California, to and through
25 a place outside of the United States, that is the Republic of Mexico,
with the intent to promote the carrying on of a specified unlawful
26 activity, that is the felonious manufacture, importation, receiving,
concealment, buying, selling, and otherwise dealing in a controlled
27 substance, punishable by the law of the United States; in violation
of Title 18, United States Code, Sections 1956(a)(2)(A), and 2.

28

                                17

**MEXICALI BASED TRAFFICKING OPERATIONS - Racketeering Acts No. 17-28**

Racketeering Act No. 17
(Importation of Cocaine)

On or about January 8, 1993, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

Racketeering Act No. 18
(Distribution With Intent to Unlawfully Import Cocaine)

On or about November 5, 1995, near La Paz, Mexico, defendants ALBERTO BENJAMIN ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, ISMAEL HIGUERA-GUERRERO, GILBERTO HIGUERA-GUERRERO, EFRAIN PEREZ, and RIGOBERTO YANEZ, did knowingly and intentionally distribute 500 grams and more of cocaine, a Schedule II Controlled Substance, intending that it would be imported into the United States; in violation of Title 21, United States Code, Section 959(a)(1), and Title 18, United States Code, Section 2.

Racketeering Act No. 19
(Importation of Cocaine)

On or about December 12, 1997, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, ISMAEL HIGUERA-GUERRERO, and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

Racketeering Act No. 20
(Importation of Cocaine)

On or about March 9, 1998, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, ISMAEL HIGUERA-GUERRERO and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

//

18

<u>Racketeering Act No. 21</u>
(Importation of Cocaine)

On or about July 19, 1999, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, ISMAEL HIGUERA-GUERRERO and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

<u>Racketeering Act No. 22</u>
(Possession With Intent To Distribute Cocaine)

On or about January 26, 2000, in Los Angeles, California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, possessed with intent to distribute approximately 500 grams and more of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

<u>Racketeering Act No. 23</u>
(Importation of Cocaine)

On or about February 8, 2000, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

<u>Racketeering Act No. 24</u>
(Importation of Cocaine)

On or about February 23, 2000, in Calexico, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX, MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO, and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally import 500 grams and more of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952(a) and 960, and Title 18, United States Code, Section 2.

<u>Racketeering Act No. 25</u>
(Importation of Cocaine)

On or about March 26, 2000, in Otay Mesa, California, within the Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX,

19

1  ISMAEL HIGUERA-GUERRERO, and GILBERTO HIGUERA-GUERRERO, did knowingly
2  and intentionally import 500 grams and more of cocaine, a Schedule II
   Controlled Substance, into the United States from a place outside
3  thereof; in violation of Title 21, United States Code, Sections 952(a)
   and 960, and Title 18, United States Code, Section 2.

4                          Racketeering Act No. 26
                  (Possession With Intent To Distribute Cocaine)
5
       On or about April 27, 2000, in Los Angeles, California,
6  defendants ALBERTO BENJAMIN ARELLANO-FELIX, EDUARDO RAMON ARELLANO-
   FELIX, FRANCISCO JAVIER ARELLANO-FELIX, ISMAEL HIGUERA-GUERRERO, and
7  JORGE AURELIANO-FELIX possessed with intent to distribute 500 grams
   and more of cocaine, a Schedule II Controlled Substance; in violation
8  of Title 21, United States Code, Section 841(a)(1), and Title 18,
   United States Code, Section 2.
9
                          Racketeering Act No. 27
10                (Possession With Intent to Distribute Cocaine)

11     On or about May 7, 2000, in Los Angeles, California, defendant
   GILBERTO HIGUERA-GUERRERO possessed with intent to distribute
12 500 grams and more of cocaine, a Schedule II Controlled Substance; in
   violation of Title 21, United States Code, Section 841(a)(1), and
13 Title 18, United States Code, Section 2.

14                         Racketeering Act No. 28
                  (Possession With Intent to Distribute Cocaine)
15
       On or about July 11, 2000, in El Centro, California, within the
16 Southern District of California, defendants ALBERTO BENJAMIN ARELLANO-
   FELIX, EDUARDO RAMON ARELLANO-FELIX, FRANCISCO JAVIER ARELLANO-FELIX,
17 MANUEL AGUIRRE-GALINDO, JESUS LABRA-AVILES, ISMAEL HIGUERA-GUERRERO,
   and GILBERTO HIGUERA-GUERRERO, did knowingly and intentionally possess
18 with intent to distribute 500 grams and more of cocaine; in violation
   of Title 21, United States Code, Section 841(a)(1), and Title 18,
19 United States Code, Section 2.

20 All in violation of Title 18, United States Code, Section 1962(c).

21                              **Count 2**

22                    **THE RACKETEERING CONSPIRACY**

23     1.   *Paragraphs 2-6 of Count 1 of this Indictment are realleged*

24 and incorporated by reference as though fully set out herein.

25     2.   Beginning in or about the year 1986, and continuing up to

26 and including November 26, 2002, within the Southern District of

27 California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,

28 aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado

1  Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El
2  Doctor, aka El Gualin, aka El Profe, aka El Abuelito, aka 13,
3  FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-
4  GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan, aka El
5  Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka
6  Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave
7  Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO
8  HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN
9  PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO
10 YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El
11 Loco Duarte; co-conspirators Ramon Arellano-Felix, Everardo Arturo
12 Paez-Martinez, David Barron-Corona; and others known and unknown to
13 the grand jury, being employed by and associated with the Enterprise,
14 as defined in Count 1 of this Indictment, which Enterprise was engaged
15 in, and the activities of which affected interstate and foreign
16 commerce, did knowingly and intentionally conspire with each other,
17 and other persons, to violate Section 1962(c) of Title 18, United
18 States Code, that is, to conduct and participate, directly and
19 indirectly, in the conduct of the Enterprise's affairs through a
20 pattern of racketeering activity, as defined in by Title 18, United
21 States Code, Sections 1961(1) and (5), consisting of the acts
22 contained in paragraph 7 of Count 1, as well as those described in
23 paragraph 3 of this Count;

24     3.    It was further a part of the conspiracy that the defendants
25 agreed that a conspirator would commit at least two acts of
26 racketeering activity in the conduct of the affairs of the Enterprise.
27 //
28 //

1                                    **OVERT ACTS**

2       4.   In furtherance of said conspiracy and to effect the objects

3 thereof, the following Overt Acts, among others, were committed within

4 the Southern District of California and elsewhere:

5      **TIJUANA BASED ENFORCEMENT OPERATIONS - OVERT ACTS 1-26**

6                        Overt Act No. 1
                (The Murder of Armando Lopez)

7

8      In or about 1989, in Tijuana, Mexico, co-conspirator Ramon
Arellano-Felix (now deceased), shot and killed Armando Lopez, a member
of the Joaquin Guzman-Loera Organization and AFO rival.

9                        Overt Act No. 2

10          (The Murder of Guillermo Castaneda-Lopez)

11      On or about October 23, 1991, in San Diego, California, at the
direction of defendants ALBERTO BENJAMIN and EDUARDO RAMON ARELLANO-

12 FELIX, members of an AFO Enterprise enforcement crew murdered
Guillermo Castaneda-Lopez.

13

14                        Overt Act No. 3
(Meeting Between AFO Leaders and Guzman-Loera Organization Leaders)

15      In or about late 1991, defendants ALBERTO BENJAMIN and EDUARDO
RAMON ARELLANO-FELIX, ISMAEL and GILBERTO HIGUERA-GUERRERO, and co-

16 conspirator Ramon Arellano-Felix (now deceased), traveled from
Tijuana, Mexico, to Culiacan, Mexico, to meet with Joaquin Guzman-

17 Loera and other members of his organization about tensions between the
AFO and the Guzman-Loera Organization.

18

19                        Overt Act No. 4
   (AFO's First Failed Attempt to Kill Joaquin Guzman-Loera)

20      In later 1991, early 1992, in Tijuana, Mexico, defendants ALBERTO
BENJAMIN and EDUARDO RAMON ARELLANO-FELIX, and conspirator Ramon

21 Arellano-Felix (now deceased), planned an ultimately unsuccessful
attempt to kill Guzman-Loera.

22                        Overt Act No. 5

23    (AFO's Second Failed Attempt to Kill Joaquin Guzman-Loera)

24      In or about the summer of 1992, in Tijuana, Mexico, defendants
ALBERTO BENJAMIN ARELLANO-FELIX and ISMAEL HIGUERA-GUERRERO cancelled

25 a meeting they had in Mexico City, Mexico, with Joaquin Guzman-Loera,
after learning of Guzman-Loera's plan to assassinate them.

26

27 //

28 //

1

<div align="center">Overt Act No. 6</div>
<div align="center">(The Murder of Alejandro Cazares)</div>

2

3   On or about September 23, 1992, in Imperial Beach, California, at the direction of defendants ALBERTO BENJAMIN and EDUARDO RAMON ARELLANO-FELIX, members of an AFO Enterprise enforcement crew murdered Alejandro Cazares.

4

5

<div align="center">Overt Act No. 7</div>
<div align="center">(AFO Defend Guzman-Loera Attack at Christine's Discotheque in Puerto Vallarta, Mexico)</div>

6

7   On or about November 8, 1992, in Puerto Vallarta, Mexico, defendants FRANCISCO JAVIER ARELLANO-FELIX, ISMAEL and GILBERTO HIGUERA-GUERRERO, and numerous other members of the AFO Enterprise, including co-conspirators Ramon Arellano-Felix and David Barron-Corona (both now deceased), fought off an assassination attempt by members of the Guzman-Loera Organization, during which several individuals were shot and killed.

8

9

10

11

<div align="center">Overt Act No. 8</div>
<div align="center">(The Murder of Juvenal LNU, aka 11-11)</div>

12

13   In or about March 1993, in Tijuana, Mexico, at the direction of co-conspirator Ramon Arellano-Felix (now deceased), members of an AFO Enterprise enforcement crew murdered AFO enforcer Juvenal LNU, aka 11-11.

14

15

<div align="center">Overt Act No. 9</div>
<div align="center">(The Murder of Robert Ceballos-Corralez)</div>

16

17   On or about March 11, 1993, in Hollenbeck, California, at the direction of co-conspirator David Barron-Corona (now deceased), members of an AFO Enterprise enforcement crew murdered Robert Ceballos-Corralez.

18

19

<div align="center">Overt Act No. 10</div>
<div align="center">(The Murder of Juvenal Gomez-Buenrostro)</div>

20

21   On or about March 16, 1993, in Chula Vista, California, at the direction of defendants ALBERTO BENJAMIN ARELLANO-FELIX and ISMAEL HIGUERA-GUERRERO, and co-conspirator Ramon Arellano-Felix (now deceased), members of an AFO Enterprise enforcement crew murdered Juvenal Gomez-Buenrostro.

22

23

<div align="center">Overt Act No. 11</div>
<div align="center">(AFO Leadership Plans Third Assassination Attempt On Guzman-Loera)</div>

24

25   In or about May, 1993, in Tijuana, Mexico, defendants ALBERTO BENJAMIN, EDUARDO RAMON, and FRANCISCO JAVIER ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, and co-conspirators Ramon Arellano-Felix and David Barron-Corona (both now deceased), planned a third assassination attempt on AFO rival Joaquin Guzman-Loera.

26

27

28   //

<div align="center">23</div>

1

<div align="center">

Overt Act No. 12

(Alberto Benjamin Arellano-Felix Goes Into Hiding)

</div>

2

On or about May 25, 1993, in Tijuana, Mexico, defendant ALBERTO
BENJAMIN ARELLANO-FELIX advised members of the Enterprise that Ramon
Arellano-Felix had left Tijuana, that he himself was going into
hiding, that all communications needing his attention should be
addressed to defendant EDUARDO RAMON ARELLANO-FELIX, and that
outstanding trafficking operations should be addressed to defendant
JESUS LABRA-AVILES.

3

4

5

6

<div align="center">

Overt Act No. 13

(Murder of Maria Ramirez-Olivas)

</div>

7

On or about January 17, 1995, in Imperial Beach, California, at
the direction of defendant ALBERTO BENJAMIN ARELLANO-FELIX, members
of an AFO Enterprise enforcement crew murdered Maria Ramirez-Olivas.

8

9

10

<div align="center">

Overt Act No. 14

(Murder of Alfredo (Winkey) Reynoso and Myrna Ochoa De Reynoso)

</div>

11

On or about January 24, 1995, in Rosarito, Baja California,
Mexico, at the direction of defendant ALBERTO BENJAMIN ARELLANO-FELIX,
members of an AFO Enterprise enforcement crew murdered Alfredo
(Winkey) Reynoso and Myrna Ochoa De Reynoso.

12

13

14

<div align="center">

Overt Act No. 15

(Murder of Arturo Ochoa-Palacios)

</div>

15

On or about April 17, 1996, in Tijuana, Mexico, at the direction
of defendant ALBERTO BENJAMIN ARELLANO-FELIX, members of an AFO
Enterprise enforcement crew murdered PGR official Arturo Ochoa-
Palacios.

16

17

18

<div align="center">

Overt Act No. 16

(Attack on Military Personnel In Zapopan, Jalisco, Mexico)

</div>

19

On or about July 22, 1996, in Zapopan, Jalisco, Mexico, at the
direction of co-conspirator Ramon Arellano-Felix (now deceased),
members of an AFO Enterprise enforcement crew ambushed some of their
"enemies" in a shootout, which resulted in the deaths of three people,
including two Mexican Military officials, Juan Fonseca Rey and Juan
Daniel Fuentes Calderon.

20

21

22

23

<div align="center">

Overt Act No. 17

(Shootout In Culiacan, Sinaloa, Mexico)

</div>

24

On or about September 16, 1996, in Culiacan, Sinaloa, Mexico,
members of an AFO Enterprise enforcement crew engaged in a shootout
with Mexican Military officials in an attempt to defend an AFO "safe
house."

25

26

27   //

28   //

<div align="center">

24

</div>

<div align="center">

Overt Act No. 18
(Plot to Murder Fernando Gutierrez)

</div>

In or about December 1996, in Tijuana, Mexico, defendants ALBERTO BENJAMIN, EDUARDO RAMON, and FRANCISCO JAVIER ARELLANO-FELIX, and co-conspirators Ramon Arellano-Felix and David Barron-Corona (both now deceased), agreed that Fernando Gutierrez would be murdered for failing to repay a debt, and plotted his murder.

<div align="center">

Overt Act No. 19
(Murder of Fernando Gutierrez)

</div>

On or about December 11, 1996, in Coronado, California, at the direction of defendants ALBERTO BENJAMIN, EDUARDO RAMON, and FRANCISCO JAVIER ARELLANO-FELIX, and co-conspirator Ramon Arellano-Felix (now deceased), members of an AFO Enterprise enforcement crew murdered Fernando Gutierrez.

<div align="center">

Overt Act No. 20
(Murder of Hodin Gutierrez-Rico)

</div>

On or about January 3, 1997, in Tijuana, Mexico, at the direction of defendant ALBERTO BENJAMIN ARELLANO-FELIX, members of an AFO Enterprise enforcement crew murdered Hodin Gutierrez-Rico.

<div align="center">

Overt Act No. 21
(Kidnaping of Alejandro Hodoyan-Palacios)

</div>

In or about March 1997, in Tijuana, Mexico, at the direction of defendants ALBERTO BENJAMIN and EDUARDO RAMON ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, members of an AFO Enterprise enforcement crew kidnaped Alejandro Hodoyan-Palacios.

<div align="center">

Overt Act No. 22
(Interrogation of Alejandro Hodoyan-Palacios)

</div>

On or about March 5, 1997, in Tijuana, Mexico, defendant JORGE AURELIANO-FELIX tape recorded an interrogation he conducted of Alejandro Hodoyan-Palacios, and then turned the recording over to defendant ISMAEL HIGUERA-GUERRERO.

<div align="center">

Overt Act No. 23
(Murder of Alejandro Hodoyan-Palacios)

</div>

On or about March 5, 1997, in Tijuana, Mexico, at the direction of defendants ALBERTO BENJAMIN and EDUARDO RAMON ARELLANO-FELIX, and ISMAEL HIGUERA-GUERRERO, members of the Enterprise murdered Alejandro Hodoyan-Palacios.

//

//

//

<div align="center">

25

</div>

<div align="center">Overt Act No. 24</div>
<div align="center">(Attempted Murder of Ramiro Ramirez)</div>

On or about March 7, 1997, in Chula Vista, California, at the direction of defendants ALBERTO BENJAMIN ARELLANO-FELIX and ISMAEL HIGUERA-GUERRERO, and co-conspirators Ramon Arellano-Felix and David Barron-Corona (both now deceased), members of an AFO Enterprise enforcement crew attempted to murder Ramiro Ramirez.

<div align="center">Overt Act No. 25</div>
<div align="center">(Murder of Maria Elena Boccaccio-Guerrero)</div>

On or about September 23, 1997, in Tijuana, Mexico, at the direction of defendant ALBERTO BENJAMIN ARELLANO-FELIX, members of an AFO Enterprise enforcement crew murdered Maria Elena Boccaccio-Guerrero.

<div align="center">Overt Act No. 26</div>
<div align="center">(Murder of Two Mexican Federal Police Officers)</div>

On or about November 14, 1997, in Tijuana, Mexico, members of an AFO Enterprise enforcement crew killed Mexican federal police officers Juan Antonio Martinez Catarino and Miguel Angel Anaya in front of the Tijuana court house in a blundered attempt to kill Federal Police Commander Felipe Perez-Cruz.

## MEXICALI BASED ENFORCEMENT OPERATIONS - OVERT ACTS 27-32

<div align="center">Overt Act No. 27</div>
<div align="center">(Murder of Armando Mascareno-Gaxiola)</div>

On or about April 10, 1997, in Mexicali, Mexico, at the direction of defendants ISMAEL and GILBERTO HIGUERA-GUERRERO, members of an AFO Enterprise enforcement crew murdered Armando Mascareno-Gaxiola.

<div align="center">Overt Act No. 28</div>
<div align="center">(Murder of Cinthya Viveros-Rodriguez)</div>

On or about November 21, 1999, in Mexicali, Mexico, at the direction of defendants ISMAEL and GILBERTO HIGUERA-GUERRERO, members of an AFO Enterprise enforcement crew murdered Cinthya Viveros-Rodriguez.

<div align="center">Overt Act No. 29</div>
<div align="center">(Kidnaping of J. Amado Peralta-Rodriguez)</div>

In or about December 1999, in Tijuana, Mexico, at the direction of defendant ISMAEL HIGUERA-GUERRERO, members of an AFO enforcement crew kidnaped J. Amado Peralta-Rodriguez, and delivered Peralta-Perez to defendants ISMAEL and GILBERTO HIGUERA-GUERRERO, and defendant EFRAIN PEREZ, who interrogated him.

//

<div align="center">Overt Act No. 30</div>
<div align="center">(Murder of J. Amado Peralta-Rodriguez)</div>

On or about December 1, 1999, in Tijuana, Mexico, at the direction of defendant ISMAEL HIGUERA-GUERRERO, members of an AFO Enterprise enforcement crew murdered J. Amado Peralta-Rodriguez.

<div align="center">Overt Act No. 31</div>
<div align="center">(Kidnaping of Cesar Gustavo Cruz-Prado)</div>

In or about December 2000, in Mexicali, Baja California, Mexico, at the direction of defendant GILBERTO HIGUERA-GUERRERO, members of an AFO Enterprise enforcement crew kidnaped Cesar Gustavo Cruz-Prado, and delivered Cruz-Prado to defendant GILBERTO HIGUERA-GUERRERO, who interrogated him.

<div align="center">Overt Act No. 32</div>
<div align="center">(Murder of Cesar Gustavo Cruz-Prado)</div>

On or about December 17, 2000, in Mexicali, Baja California, Mexico, defendant GILBERTO HIGUERA-GUERRERO and members of an AFO Enterprise enforcement crew murdered Cesar Gustavo Cruz-Prado.

All in violation of Title 18, United States Code, Section 1962(d).

<div align="center">**Count 3**</div>

<div align="center">**CONSPIRACY TO IMPORT A CONTROLLED SUBSTANCE**</div>

1.    Paragraphs 2 through 6 of Count 1, and Overt Acts No. 1-32 of Count 2 of this Indictment are realleged and hereby incorporated by reference in this count as though fully set forth herein.

2.    Beginning in or about the year 1986, and continuing up to and including November 26, 2002, within the Southern District of California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX, aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El Doctor, aka El Gualin, aka El Profe, aka El Abuelito, aka 13, FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan, aka El Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave

<div align="center">27</div>

1   Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO

2   HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN

3   PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO

4   YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El

5   Loco Duarte, did knowingly and intentionally conspire with each other,

6   and other persons known and unknown to the grand jury, to import a

7   controlled substance, including 500 grams and more of cocaine, a

8   Schedule II Controlled Substance, and 100 kilograms and more of

9   marijuana, a Schedule I Controlled Substance, into the United States

10   from a place outside thereof; in violation of Title 21, United States

11   Code, Sections 952(a), 960, and 963.

12                                       **Count 4**

13         **CONSPIRACY TO DISTRIBUTE A CONTROLLED SUBSTANCE**

14     1.   Paragraphs 2 through 6, of Count 1, and Overt Acts No. 1-32

15   of Count 2 of this indictment are realleged and hereby incorporated by

16   reference in this count as though fully set forth herein.

17     2.   Beginning in or about the year 1986, and continuing up to

18   and including November 26, 2002, within the Southern District of

19   California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,

20   aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado

21   Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El

22   Doctor, aka El Gualin, aka El Profe, aka El Abuelito, aka 13,

23   FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-

24   GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan, aka El

25   Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka

26   Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave

27   Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO

28   HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN

1  PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO
2  YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El
3  Loco Duarte, did knowingly and intentionally conspire with other
4  persons known and unknown to the grand jury, to distribute a
5  controlled substance, including 500 grams and more of cocaine, a
6  Schedule II Controlled Substance, and 100 kilograms and more of
7  marijuana, a Schedule I Controlled Substance; in violation of
8  Title 21, United States Code, Sections 846, and 841(a)(1).

9                              **Count 5**

10                   **THE MONEY LAUNDERING CONSPIRACY**

11       1.   Paragraphs 2 through 6 of Count 1 of this indictment are
12  realleged and hereby incorporated by reference in this count as though
13  fully set forth herein.

14       2.   Beginning in or about the year 1986, and continuing up to
15  and including November 26, 2002, within the Southern District of
16  California and elsewhere, defendants ALBERTO BENJAMIN ARELLANO-FELIX,
17  aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado
18  Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El
19  Doctor, aka El Gualin, aka El Profe, aka El Abuelito, aka 13,
20  FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-
21  GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan, aka El
22  Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka
23  Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave
24  Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO
25  HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN
26  PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO
27  YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El
28  Loco Duarte, did knowingly and intentionally conspire and agree with

                                29

1  each other, and with other persons, known and unknown to the grand

2  jury, to:

3    (a) conduct a financial transaction affecting interstate and

4  foreign commerce, knowing that the property involved in the financial

5  transaction represented the proceeds of some form of unlawful

6  activity, which in fact involved the proceeds of specified unlawful

7  activity, that is, the felonious manufacture, importation, receiving,

8  concealment, buying, selling and otherwise dealing in a controlled

9  substance, punishable under the laws of the United States: (1) with

10  the intent to promote the carrying on of specified unlawful activity;

11  and (2) knowing that the transaction was designed, in whole or in

12  part, to conceal and disguise the nature, the location, the source,

13  the ownership, and the control, of the proceeds of specified unlawful

14  activity; in violation of Title 18, United States Code,

15  Sections 1956(a)(1)(A)(i) and (B)(i); and

16    (b) knowingly transport, transmit, and transfer monetary

17  instruments and funds from a place in the United States to and through

18  a place outside the United States and to a place in the United States

19  from and through a place outside the United States: (1) with the

20  intent to promote the carrying on of specified unlawful activity; and

21  (2) knowing that the monetary instruments or funds involved in the

22  transportation, transmission and transfer represent the proceeds of

23  some form of unlawful activity and knowing that such transportation,

24  transmission, and transfer was designed in whole or in part to conceal

25  and disguise the nature, the location, the source, the ownership, and

26  the control, of the proceeds of specified unlawful activity; in

27  //

28

30

1  violation of Title 18, United States Code, Sections 1956(a)(2)(A)

2  and (B)(i).

3  All in violation of Title 18, United States Code, Section 1956(h).

4  **FORFEITURE ALLEGATION**

5      1.   The allegations contained in Counts 1 and 2 are realleged

6  and by reference are fully incorporated herein for the purpose of

7  alleging forfeiture to the United States of America, pursuant to the

8  provisions of Title 18, United States Code, Section 1963.

9      2.   As a result of the commission of the felony offense alleged

10  in Count 1 and/or 2, said violation being punishable by imprisonment

11  for more than one year, and pursuant to Title 18, United States Code,

12  Section 1962(a), defendants ALBERTO BENJAMIN ARELLANO-FELIX, aka El

13  Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado Sanchez,

14  aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El Doctor,

15  aka El Gualin, aka El Profe, aka El Abuelito, aka 13, FRANCISCO JAVIER

16  ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-GALINDO, aka El

17  Caballo, aka A-1, aka El Meno, aka El Galan, aka El Promotor, JESUS

18  LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka Chulitio, aka 25,

19  ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave Privada, aka Pluma-

20  Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO HIGUERA-GUERRERO, aka

21  El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN PEREZ, aka Efra, aka 85,

22  JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO YANEZ, aka Primo, aka

23  Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El Loco Duarte, shall

24  forfeit to the United States: all interest the defendants acquired or

25  maintained in violation of Title 18, United States Code, Section 1962;

26  any and all interest in, security of, claim against, and property and

27  contractual right of any kind affording a source of influence over,

28  any and all enterprises the defendants established, operated,

31

1  controlled, conducted, and participated in the conduct of, in
2  violation of Title 18, United States Code, Section 1962; and any
3  property constituting, or derived from, any proceeds the defendants
4  obtained, directly or indirectly, from racketeering activity in
5  violation of Title 18, United States Code, Section 1962, including but
6  not limited to, $289,000,000 in U.S. currency.

7      3.   The allegations contained in Counts 3 through 5 are
8  realleged and by their reference fully incorporated herein for the
9  purpose of alleging forfeiture to the United States of America
10 pursuant to the provisions of Title 21, United States Code,
11 Section 853 and Title 18, United States Code, Section 982.

12     4.   As a result of the commission of the felony offenses alleged
13 in Counts 3 and 4, said violations being punishable by imprisonment
14 for more than one year, and pursuant to Title 21, United States Code,
15 Section 853(a)(1), defendants ALBERTO BENJAMIN ARELLANO-FELIX, aka El
16 Senor, aka El Min, aka 76, aka 7-7, aka MK, aka Licenciado Sanchez,
17 aka Licenciado Alegria, EDUARDO RAMON ARELLANO-FELIX, aka El Doctor,
18 aka El Gualin, aka El Profe, aka El Abuelito, aka 13, FRANCISCO JAVIER
19 ARELLANO-FELIX, aka El Tigrillo, MANUEL AGUIRRE-GALINDO, aka El
20 Caballo, aka A-1, aka El Meno, aka El Galan, aka El Promotor, JESUS
21 LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka Chulitio, aka 25,
22 ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave Privada, aka Pluma-
23 Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO HIGUERA-GUERRERO, aka
24 El Gil, aka Gil, aka Gilillo, aka 28, EFRAIN PEREZ, aka Efra, aka 85,
25 JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO YANEZ, aka Primo, aka
26 Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El Loco Duarte, shall
27 upon conviction, forfeit to the United States all their rights, title
28 and interest in any and all property constituting or derived from

32

1 proceeds obtained directly or indirectly as the result of said

2 violations, including but not limited to: $289,000,000 in U.S.

3 currency.

4     5.  As a result of the commission of the felony offense alleged

5 in Count 5 of this indictment, said violations being punishable by

6 imprisonment for more than one year and pursuant to Title 18, United

7 States Code, Section 982(a)(1), defendants ALBERTO BENJAMIN ARELLANO-

8 FELIX, aka El Senor, aka El Min, aka 76, aka 7-7, aka MK, aka

9 Licenciado Sanchez, aka Licenciado Alegria, EDUARDO RAMON ARELLANO-

10 FELIX, aka El Doctor, aka El Gualin, aka El Profe, aka El Abuelito,

11 aka 13, FRANCISCO JAVIER ARELLANO-FELIX, aka El Tigrillo, MANUEL

12 AGUIRRE-GALINDO, aka El Caballo, aka A-1, aka El Meno, aka El Galan,

13 aka El Promotor, JESUS LABRA-AVILES, aka Chuy Labra, aka Don Chuy, aka

14 Chulitio, aka 25, ISMAEL HIGUERA-GUERRERO, aka El Mayel, aka Clave

15 Privada, aka Pluma-Blanca, aka La Senora, aka 30, aka 8-1, GILBERTO

16 HIGUERA-GUERRERO, aka El Gil, aka Gil, aka Gililllo, aka 28, EFRAIN

17 PEREZ, aka Efra, aka 85, JORGE AURELIANO-FELIX, aka Macumba, RIGOBERTO

18 YANEZ, aka Primo, aka Primo Pedro, and ARMANDO MARTINEZ-DUARTE, aka El

19 Loco Duarte, shall, upon conviction, forfeit to the United States all

20 their rights, title and interest in any and all property involved in

21 such offenses, or any property traceable to such property, including

22 but not limited to: $289,000,000 in U.S. currency.

23     6.  If any of the above-described forfeitable property, as a

24 result of any act or omission of the defendants -

25         (a)  cannot be located upon the exercise of due diligence;

26         (b)  has been transferred or sold to, or deposited with, a

27             third party;

28         (c)  has been placed beyond the jurisdiction of the Court;

1           (d)   has been substantially diminished in value; or

2           (e)   has been commingled with other property which cannot be

3                 subdivided without difficulty;

4  it is the intent of the United States, pursuant to Title 21, United

5  States Code, Section 853(p), to seek forfeiture of any other property

6  of the defendants up to the value of the said property listed above as

7  being subject to forfeiture.

8  All in violation of Title 21, United States Code, Section 853, and

9  Title 18, United States Code, Sections 982 and 1963.

10      DATED: December 4, 2003.

11                                    A TRUE BILL:

12

13                                        12/4/2003

                                    Foreperson

14

15 _Carol C. Lam_

16 CAROL C. LAM
   United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28

PLEASE RECEIPT AND RETURN

FILED

03 DEC -4 PM 2:24

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

July 2002 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. __97CR2520K__ |
| Plaintiff, ) | I N D I C T M E N T |
| ) | **(7th Superseding)** |
| v. ) | |
| ) | Title 18, U.S.C., Sec. 1962(c) - |
| ALBERTO BENJAMIN ) | Conducting the Affairs of an |
| ARELLANO-FELIX (1), ) | Enterprise Through Pattern of |
| aka El Senor, ) | Racketeering Activity; Title 18, |
| aka El Min, ) | U.S.C., Sec. 1962(d) - Conspiracy |
| aka 76, ) | to Conduct Enterprise Affairs |
| aka 7-7, ) | Through Pattern of Racketeering |
| aka MK, ) | Activity; Title 21, U.S.C., |
| aka Licenciado Sanchez, ) | Secs. 952(a), 960, and 963 - |
| aka Licenciado Alegria, ) | Conspiracy to Import a Controlled |
| EDUARDO RAMON ) | Substance; Title 21, U.S.C., |
| ARELLANO-FELIX (2), ) | Secs. 841(a)(1) and 846 - |
| aka El Doctor, ) | Conspiracy to Distribute a |
| aka El Gualin, ) | Controlled Substance; Title 18, |
| aka El Profe, ) | U.S.C., Secs. 1956(a) and |
| aka El Abuelito, ) | 1956(h) - Conspiracy to Launder |
| aka 13, ) | Monetary Instruments; Title 18, |
| FRANCISCO JAVIER ) | U.S.C., Sec. 2 - Aiding and |
| ARELLANO-FELIX (3), ) | Abetting; Title 21, U.S.C., |
| aka El Tigrillo, ) | Sec. 853 and Title 18, U.S.C., |
| MANUEL AGUIRRE-GALINDO (4), ) | Secs. 982(a)(1), (b)(1) and |
| aka El Caballo, ) | 1963(a) - Criminal Forfeiture |
| aka A-1, ) | |
| aka El Meno, ) | |
| aka El Galan, ) | |
| aka El Promotor, ) | |
| JESUS LABRA-AVILES (5), ) | |
| aka Chuy Labra, ) | |
| aka Don Chuy, ) | |
| aka Chulitio, ) | |
| aka 25, ) | |

I hereby attest and certify on 12/4/03
That the foregoing document is a full true and correct
copy of the original on file in my office and in my legal
custody.
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____ Deputy

LED/JDK:nlv:San Diego
12/4/03